Mr. Parker, before you get started, just a word of clarification, I'm not sure the on the issue of whether there should be a certification to the West Virginia Supreme Court of Appeals, and it should have been clear to say that we're interested in your thoughts on whether both of those issues should be certified. I anticipated that might be possible, Your Honor, so I can address that. May it please the Court, I'm Don Parker, I'm here for Audrey Kenney, who's the widow of Ronald Kenney. As you know, her lawsuit against Foresters was dismissed by Judge Groh in the Northern District of West Virginia over a choice of law issue, and I'm here to convince you that that was a mistake by Judge Groh. I think that the root cause of the error that Judge Groh made was when she was doing the choice of law analysis, I think she looked too far back in time in trying to define the wrongful conduct that was at issue. You know, when the plaintiff is suing the defendant for, in order to determine, you know, is that contractual conduct or is that tortious conduct? Well, Judge Groh looked back to the formation of the contract and she looked to a period of time when the contract was possibly altered, but she should have been focusing exclusively on when the tortious conduct occurred, and I want to make sure we're absolutely clear about this. Mrs. Kenney is not suing Foresters for anything that happened in 1984 when this insurance policy was issued, and she's not suing Foresters for anything that happened in 1994 when there was interaction between the insurance company and her husband, Mr. Kenney, about possibly increasing the amount of the policy. What she's suing Foresters for, and she's also not suing Foresters for any benefits that are due under the policy. Why? Well, the simple fact is they've already paid all of that. You know, we had a dispute over the amount. They resolved that dispute for us by paying the extra money that we believe that they owed. So, there are no more contractual claims between the two parties. The only thing that Mrs. Kenney sued Foresters for was the tort of violating the Unfair Trade Practices Act. Unlike many states, West Virginia allows for a private cause of action for violations of the Unfair Trade Practices Act, and it's not that different from any other tort that's based on the violation of a statute. A normal tort analysis says there has to be a duty, a breach of that duty, causation of damage and actual damage. Well, in any sort of violation of a statute situation where someone has a right, a private cause of action, the breach of the duty is the violation of the statute. That's exactly what the Unfair Trade Practices Act claim is in West Virginia. Now, the factual wrongs, well, the Unfair Trade Practices Act by its nature, the part of it that we sued under is meant to regulate insurance claim handling. It's a list of things that insurance companies are not supposed to do. And it is in essence a statute that defines improper claim handling in West Virginia. And if some insurance company engages in improper claim handling, someone can sue for that. And not necessarily the policyholder, and I'll get to that in a minute. The factual wrongs that Mrs. Kenney is accusing Foresters of committing didn't happen in 1984, and they didn't happen in 1994. They happened after her husband, Mr. Kenney, died. It happened after she made a claim under this life insurance policy. So the window of when the tortious conduct occurred was actually much narrower than Judge Agro defined it. It is from September the 21st of 2011 when Mrs. Kenney told the insurance company that her husband had passed away, and July the 20th of 2012 when Foresters changed its mind, and instead of only giving her the $80,000 that they thought they originally owed, they paid her the $130,000. Now, during that period of time, between the time the claim was made and the time the claim was fully paid to Mrs. Kenney's satisfaction, Foresters had statutory duties under the Infreditary Practices Act. And the one that I want to bring to your attention, there are several that are applicable here, but I want to focus on one in particular because I think it is where Judge Agro got this wrong. They have a duty, a statutory duty, to conduct a reasonable investigation of Mrs. Kenney's claim based upon all available information. That's subpart D of 33-11-4 subpart 9 of West Virginia Code. That's the Infraditary Practices Act. Now, in 2011 when the claim was made, Foresters should have been looking back at what happened in 1994 when there was discussion between the insurance company and Mr. Kenney about increasing the amount of the policy. But that's the evidence they should have been looking at in adjusting the claim in 2011. That was not the tortious conduct. The tortious conduct happened in 2011 and 2012 as they were adjusting the claim. So when they looked at that historical evidence, when in 2011 they looked at the claim, and in doing it wrong, they came to the conclusion that they only owed Mrs. Kenney $80,000. And eventually in 2012, they changed their mind and they said, here's the other $50,000. Counsel, I think we understand the background of the case. We have, and by we I mean the Fourth Circuit, not a few cases that arise over the years under this West Virginia Act. Which comes to us under a diversity or other jurisdictional basis. And there certainly are some cases that would seem to follow your line of argument, dealing in tort and then moving to do you apply the Lex Loci Delecta rule in that circumstance or do you move into the restatement rule? But there are other cases, both West Virginia cases and district court cases, and our Yoast decision, even though it's unpublished, that arguably go in another direction. And frankly it's a bit confusing to know exactly what the law of West Virginia is in these circumstances. And I think that's what led the court to inquire about whether or not certification might be a valuable tool here so that as these cases arise in the future, we have a definitive statement from the highest court in West Virginia on how we as a federal court are to apply that state's law. So maybe you could speak to that a little bit. Absolutely, Your Honor. It was actually the next thing I was about to move on to. Obviously you've asked, should that issue be certified? And so let me make sure I'm defining it properly. In determining choice of law for an Unfair Trade Practices Act lawsuit, does a contract tort or hybrid analysis apply? That was the question you had put in your order. Well, I'm torn a bit and here's why I'm torn. I know that the law seems pretty clear to me that the West Virginia Supreme Court has never said that an Unfair Trade Practices Act claim is anything other than a tort. Well, why would it possibly be a contract? I mean, why are we even arguing that here? Judge Keenan, it's a great question and I believe that the reason is because often these Unfair Trade Practices Act claims are bundled along with a contractual dispute over the policy. Don't we really need to focus though on, can this court decide the case if we agree with you that it's a tort? How do we know whether to apply lex loci or apply hybrid analysis? Apply a conflicts analysis, such as that employed by the district court. How do we know which we do? You mean regarding whether it should be the restatement test or just simple lex loci or delicti? Well, Your Honor, because West Virginia law I believe is pretty clear that they will apply lex loci or delicti unless it is a super complicated issue. Well, where was the wrong, where did the injury occur? It occurred in West Virginia because when you take a look at other law in West Virginia, I'm talking about a Supreme Court that defines lex loci delicti. Take a look at the Paul versus National Life case. Take a look particularly at the Vest versus St. Albans Psychiatric Hospital case. Here's a quote, the substantive, this is what lex loci delicti means in West Virginia. The substantive rights between the parties are determined by the law of the place of injury. That's a very important statement. The law of the place of injury. For eight years before Mr. Kenney died, he was a West Virginia resident. Yes, the contract was made in Virginia, but by the way, that contract was made with an insurance company that sold these life insurance policies all across the country. But the insurance company was in Canada, right? Yes. Could that have been the place of injury? No, because that might have been where the claims adjusters were sitting when they were adjusting the claim, but the harm was felt in West Virginia. You're saying it's where the injury is sustained as opposed to perhaps put in motion? Yes, Your Honor. Tortious conduct is not tortious until it causes harm, and we see that in statute limitations analyses all the time. Let's suppose that we don't certify the question. I'm sorry, Your Honor. Suppose we don't certify the question. Yes, Your Honor. Does it make any difference under which analysis we use in Lex Loci or the restatement? I think it shouldn't. So let me go through that a bit. If you do what I suggest, which is to focus on the actual tortious conduct that was alleged in the complaint, then the restatement test actually reaches the same result as Lex Loci and Delecti. Here's why. What are the four main factors under Section 145 of the restatement test? The place where the injury occurred? Well, clearly, Mrs. Kenney suffered the injury in West Virginia. Now, Judge Groh made the mistake of, in that part of the analysis, looking at where the contract was made, but that's not the issue. The issue is where was Mrs. Kenney when she felt the harm of the bad decision by the insurance company, and it was clearly West Virginia. The place where the conduct causing the injury occurred, again, Judge Groh looked at, well, the contract was made in Virginia, but that's not what matters. But the conduct causing the injury, the conduct was the insurance company's action. Yes, Your Honor, and that would have been Canada. So the second factor would have focused completely on Canada. Where the parties are domiciled or where they do business. Well, Forrest just does business everywhere. The bottom line of the argument you're making now, which you're free to continue, the bottom line is, say, if we applied the restatement, then Judge Groh's balancing was wrong. Yes. Yes, because she was focused on, well, where was the contract made? And that was not the tortious conduct. Or where did the Kenneys live when the contract was altered? Neither of those things was the tortious conduct that was being alleged here. The tortious conduct, I mean, we were accusing these folks of improper claim handling. You can't improperly claim that hasn't been made yet. The claim was only made after Mr. Kenney died. The last factor, Your Honor, the place where the relationship is centered, this is critical. For the last eight years of the relationship between Forresters and Mr. Kenney, Mr. Kenney was a West Virginia resident. The way that Forresters received its premium payments was to automatically withdraw the premium payments from Mr. Kenney's bank account. Mr. Kenney, when he lived in West Virginia, had a West Virginia bank account, and Forresters clearly knew that for eight years they were insuring the life of a West Virginia resident. So maybe back in 1984, this relationship — my time is out, Your Honor. Please, finish. Let me finish. From 1984, yes, that relationship was centered in Virginia. But in 2003, that relationship was centered in West Virginia, and Forresters clearly knew that it was insuring the life of a West Virginia resident and had to respect the laws of the state of West Virginia that are meant to protect consumers of insurance products in the state of West Virginia. Thank you. I'll have some more time after all. Mr. Massey. May it please the Court. Let me start, I think, with something that was said that I think is not entirely accurate. There is nothing in any of the briefing that was submitted that would indicate that the appellant challenged Judge Groves' analysis under the restatement. But they did challenge it in the trial court? Yes, yes, Your Honor. So they did preserve it in front of the trial courts? Yes. But you're saying they waived it on appeal by not raising it on appeal? I believe they did. I believe that the briefing that has been filed, all the argument is that the correct standard which should be applied is lex loci delicti. There is no argument that I've seen that Judge Grove improperly analyzed the claim under contracts analysis or that Judge Grove improperly analyzed the claim under a hybrid claim. The issue that this Court has to address is whether a policy which was issued in Virginia to a Virginia resident with a Virginia beneficiary which contained a choice of law provision that said Virginia law should apply, where the acts which are the subject of the dispute between the parties, which occurred in 1994 in Virginia, should now be subject to West Virginia law. Well, because it's a tort. We're talking about a tort here. We're not talking about the insurance contract. That claim's been paid. Well, that's not exactly accurate. It is a tort, but it is a tort based on a contract. West Virginia? Absolutely. But the contract has been satisfied. The claim was paid. That's correct. So what makes it a contract? Well, West Virginia law would recognize that an Unfair Trade Practices Act claim cannot exist in the absence of a contract. So it is the tort duties which are allegedly violated arise from the contract. And, in fact, if you look at the briefing, the reply brief of the appellant specifically, the allegation in the argument heading of the reply brief is that Forrester's violated the Unfair Trade Practices Act and the implied covenant of good faith and fair dealing. So do you concede that it's a tort? I do concede it is a tort, but I'd also believe that that's the beginning of the analysis, not the end of the analysis. West Virginia law does not hold that all tort actions are governed exclusively by the doctrine of lex loci delicti. Multiple cases from the West Virginia Supreme Court of Appeals have held that in a situation where you have a tort arising from a contract, that lex loci delicti is a simple concept that does not adequately meet the needs of the parties. The part of the district court's opinion that does a contract analysis is . . . that's not relevant here, is it? I mean, if you've agreed that it's a tort and the wilt decision from the West Virginia Supreme Court of Appeals would seem to indicate that it is, then what relevance would a contract analysis have here? Well, I think it has this relevance, Your Honor. The question that underlies everything that the dispute between the parties is, what was owed under the insurance policy? Forrester says only $80,000 was owed. The appellant, Mrs. Kenny, says $130,000 was owed. Thus, the question of what did the contract say, what are the terms of the contract, what were the benefits that were payable under the contract, in fact, govern the dispute between the parties. Well, the complaint's not saying they violated a duty under the contract, is it? No, no, it isn't. It is phrased in terms of an unfair trade practices act. The relationship to the contract is merely evidentiary. There may be some background evidence needed for the court to decide the tort claim, but that doesn't make it contractual in any respect. No, I believe that it is . . . an unfair trade practices act claim is a tort claim, but the tort duties arise because of the contractual relationship between the parties and are governed . . . No, the tort duties arise. As I understand the Wilk case, the tort duties arise based on the . . . in this case, the insurance company's treatment of the beneficiary who was making a claim under the insurance contract, but they don't arise because of the contract. It's because of the treatment of the beneficiary who was asserting her right to collect the I believe what you're saying is correct. It's their conduct. It was their conduct with regard to the beneficiary, not their conduct with regard to the decedent or his contractual rights. Well, I'm not so sure I agree with that because in 1994, there was an application for an increase in benefits. Right. And then . . . And they paid it. I'm sorry, Your Honor. They paid it. They paid the full $130,000. So the contract was satisfied. I'm not sure that that's entirely accurate. What's not accurate about that? Forresters did pay $130,000, but they never conceded nor believed that the contract was for $130,000. Right, but they paid the full amount that was alleged to be due under the contract. That's correct. Okay, so let's not mince words. And I didn't mean to. I apologize. What I'm suggesting is that the dispute between the When the form was submitted that the application was made, then there was a form back from Forresters to the insured saying, please sign this and indicate that you've accepted $130,000 in benefits. That form contained an expiration clause, which was dated in October of 1994. At the time that form was submitted, you were already past the deadline. So the dispute which gave rise to this matter is, in fact, part of the contractual relationship between the parties. The UTPA, obviously, is the tort. Judge Keenan's already covered some of this ground. All that seems to be evidentiary to what are the elements that have to be proved to show that this tort was committed. So, it seems like that brings us to the question of, well, if it's a tort, then why would we not apply the normal West Virginia rule of lex locat delecta? Why would you consider this one of those thorny cases, as the West Virginia Supreme Court of Appeals calls it, where you move to some other conflicts analysis to determine the place of the wrong and which state's law applies? So tell us why we should either let that court figure it out or why your opposing counsel's argument is incorrect. Well, let me start with why this court should decide the issue. The standard for certification for West Virginia to accept a certified question is whether the answer is determinative of the pending cause and whether there is controlling precedent from West Virginia. I thought the rule said may be determinative. Excuse me, may be determinative. In this matter, counsel has indicated that lex loci, he believes, would result in West Virginia law being applied, so we believe, in fact, the first standard potentially is met. Again, I think that if you apply a tort analysis, then you should use the modified or the hybrid analysis part tort, part contract. But that sort of goes to the second point is, is there precedent in West Virginia that this court can look at to guide its decision? And the answer to that question is unquestionably yes. West Virginia has decided at least three cases, not Unfair Trade Practices Act cases, but has decided three cases where there is a tort which arises because of a contractual relationship among the parties and has, in each of those situations, indicated that lex loci delicti does not apply, but they're going to look at the more modern trend of restatement. I think the concern we have here is that we do have some number of these West Virginia Unfair Trade Practices Act cases, and the district courts seem to have gone off in different directions, which isn't very helpful to us in trying to decide which of these West Virginia rules applies. And the fact that the precedent that you're arguing does not come from Unfair Trade Practices Act cases would seem to indicate that there isn't a clear rule from the West Virginia Supreme Court of Appeals on what to do with cases that come up under that act. That's correct. There is not a case directly on point from the West Virginia Supreme Court, but as . . . So, I mean, why shouldn't we ask them to tell us what that rule is? Because I think that this, unlike some of the other cases that this court has certified to the West Virginia Supreme Court where there is an extensive policy reason that the West Virginia court should decide it, for example, I think the polling case versus Motorist Mutual where there was a question of settlements that may be impacted and whether one party can sue another. And it's going to impact a huge number of cases and pending cases in West Virginia. This case doesn't present that fact pattern. Well, let's assume that the restatement favors Virginia. West Virginia has favoritism toward laws that align its own public policy, which the state of West Virginia believes trumps any comity to Virginia law. Why isn't that a good policy for West Virginia to have? And what's legally wrong with that? I want to make sure I understand your question. West Virginia would not apply the law of Virginia if Virginia law violates West Virginia law of public policy. In this situation, the cases that have been decided have indicated that whether there is an implied . . . whether there is a private cause of action or no cause of action is not a violation of West Virginia public policy. The federal cases that were previously mentioned in the briefing, Penn, Cole from Judge Goodwin, Yost versus Travelers, M&S Partners, and Farrell versus Grange Insurance have indicated . . . and the key component of all of those was can you proceed with a bad faith claim because the other state's law does not allow for a private cause of action. And each of those cases that were decided said the fact that there is not an implied cause of action, private cause of action, is not a violation of West Virginia public policy. Here, Virginia has as much public policy as West Virginia in terms of was this policy, insurance certificate, handled correctly. Again, it was issued in Virginia to a Virginia citizen and the issues surrounding . . . that So there is an equal public policy from Virginia as opposed to West Virginia and Virginia does recognize having mechanism for insurance company conduct to be investigated and handled. It's just not through a private cause of action by the beneficiary. It's an administrative proceeding. West Virginia now has that as well for third parties only. That's the exclusive remedy. So West Virginia public policy would not say eliminating a private cause of action for someone who believes that they've been mistreated by an insurance company because, in fact, West Virginia has done that themselves in a third party situation. But Ms. Keeney is the plaintiff and she is the person in harm. Yes. And why should she be forced to go to Virginia when West Virginia has a statutory mechanism by which she can get justice? Because they agreed under the policy that the rights and liabilities under the policy would be governed by Virginia law. Under the policy. Under the policy, not the tort. Yes, Your Honor. Because that was the expectation of the parties, we believe, that when the parties entered into an arrangement in Virginia where the issues, the facts which gave rise to the dispute between the parties occurred in Virginia, that, in fact, the parties would expect that Virginia law would apply. Well, I'm from South Carolina. Most insurance policies are written by some company elsewhere and when we have a bad faith claim there, we can sue them in South Carolina, even though the policy may say otherwise, because the harm occurred to me, for example, in South Carolina. Yes, sir. If we accepted your argument, then we would, if this contractual provision were in every insurance policy and it was a foreign state from the insured, you would be forcing people to go all over the country to litigate what they perceive to be a wrong. I think there are two differences, two points I'd like to make in response to your question. First, there's been no argument from the appellant that the choice of law provision is unfair or should not be enforced in any way. But more importantly, the risk that was insured in your situation that you just gave me, the risk that was insured was South Carolina. The parties insured a risk in South Carolina. Here the parties insured a risk in Virginia. So and let me sort of change your question just slightly. If you have an auto accident in South Carolina, but your insurance policy says that any dispute between you and your insurer should be handled by Virginia law, then there's a serious problem with that choice of law provision because Virginia has no connection to the forum, to the place where the tort or the wrong occurred. And the risk is in South Carolina. West Virginia has addressed that question, or at least some federal courts in West Virginia have, and have said a forum provision will not be applied unless the forum that is chosen has some connection with the events. So if they had chosen California, for example, there's no question that California law would not apply. Here, Virginia, which was the chosen venue, does have significant connections to the parties. No, it doesn't. It has significant connections to the policyholder in the insurance company, but it doesn't have any significant connection to Mrs. Kinney, does it? What's its connection to Mrs. Kinney, other than the fact that she's the beneficiary? But she didn't have the contractual relationship. No, Your Honor. At the time that the policy was taken out, Mrs. Kinney was a Virginia resident. At the time she was designated as a beneficiary . . . But she didn't have the contractual relationship. She wasn't the policyholder. Mr. Kinney could have crossed her off at his whim. That's correct. Mm-hmm. The thing that's hanging me up, Mr. Massey, in your argument is the restatement talks about the place where the relationship, if any, between the parties is centered. Well, Mr. Kinney is not a party to the tort action. Mrs. Kinney is, and the insurance company is. Isn't that correct? That's correct. Okay. So how could Virginia be the place where the relationship between the parties, the relationship between Mrs. Kinney and the insurance company, how could that be Virginia, rather than West Virginia? Because I believe that when looking at that element of the restatement of conflicts of law, the relationship of the parties, I don't . . . I think you have to look at the entire . . . That means the parties to the lawsuit, doesn't it? Yes, Your Honor. Mm-hmm. I think you have to look at the entire relationship between the parties. Well, and let me rephrase . . . Between the parties. Yeah. Yeah. I'm not entirely sure that it means merely just the parties to the lawsuit, because Mr. Kinney is an important . . . he is not a party in the traditional sense. But he's deceased. He can't be a party. He is not a party in the traditional sense. As a matter of law, he can't be a party. He's deceased. Yes. Yes, Your Honor. Well . . . But he was a party to the contract, which gave rise to the disputes. Perhaps what I'm . . . If we assume that we're proceeding in tort, and that Mrs. Kinney, as the party to this action, is in West Virginia, whatever happened to her happened in West Virginia, happened to her in West Virginia, why isn't the Lex Loci doctrine essentially the default that you go to? Why would we even look at a restatement analysis? Well, because I don't think . . . What's your best argument that it doesn't apply? Because if you look at all of the factors, West Virginia is not the only venue involved here. The place of the injury may have been arguably West Virginia, but also arguably Virginia, because that's where the conduct gave rise. But . . . Wait a minute. Wait a minute. How could the place of the injury be Virginia? I mean . . . The conduct causing the injury, I should say. Yes. And the conduct was the conduct of the insurer . . . Yes, Your Honor. . . . allegedly. Yes, Your Honor. You know, if the claim is successful. So the insurer wasn't denying the claim in Virginia. Are you saying the insurer was sitting in Virginia denying the claim? No, Your Honor. Okay. So, how then is Virginia the place of the conduct denying the claim? It is the place of the conduct which gave rise to the dispute between the parties. Again, the application submitted in West Virginia, the change of beneficiary . . . or excuse me, the increase requested in West Virginia . . . In terms of the tort. That happened long after the insurance policy is done. The applicant for the insurance, the insurer is deceased. So, you've got two parties, the insurance company and Mrs. Kinney. She tries to settle the policy. She's in West Virginia. She says that the practices of the insurer were unfair as she tries to settle it. So, you've got two parties. Between those two parties, why doesn't the Lex LOCA doctrine apply and you use West Virginia law? It's your best argument that that doesn't work. Where's the place of the wrongful conduct? If the wrongful conduct is as was stated in Yoast, then it's Toronto, Canada. Mr. Parker is saying, though, it's where the injury is sustained. Why is that not the case? Because that's not where the wrongful conduct occurred. The wrongful conduct supposedly was the investigation of the claim. I submit that the wrongful conduct alleged is that you didn't handle the request for increase in premium, or excuse me, benefits correctly. That occurred in Virginia. So, you can't just look at Lex LOCA. What duties were allegedly violated? Well, there's the duty to investigate, but there's also the investigation would then lead you right back to what happened in Virginia. Is the claim adjusted in Virginia as opposed to Canada? No, the claim was adjusted in Canada. I suppose it was adjusted in Canada. Yes, Your Honor. It was adjusted in Canada. That would be a pretty good argument to say we ought to go to Canada, but nobody's raised the issue about Canada being involved. So, the wrong has to occur in West Virginia, doesn't it, if the claim was adjusted in Canada? I believe that the injury occurs in West Virginia, but the wrongful conduct potentially occurs in Canada, or wrongful conduct by mishandling the request for benefit increase occurs in Virginia. The point being that Lex LOCA, which is a simple concept, does not handle this matter. And as West Virginia courts have said, when you have particularly thorny issues of conflict of law analysis, Lex LOCA is not what they use. They use the modified part-tort-part contract in the restatement, and the restatement analysis, all the factors that you go through those, as Judge Grove did, indicate that Virginia law would apply. Thank you very much, Mr. Massey. We appreciate your argument. Mr. Parker, you have some additional time. Yes, Your Honor. Thank you. Let me ask you, if we assume that we're proceeding in tort only, and we assume that the injury occurred in West Virginia, since the district court never dealt with applying the facts to the doctrine of Lex LOCA, if you assume that was how we were to proceed, would we have to remand the case to the district court to make factual findings to make that determination? I don't think there's a dispute of fact. If you apply Lex LOCA delicti. And so I think that obviously remand should occur, whether you remand with a need for factual findings. Some other case maybe, not in this case. In this case, there does not seem to be a dispute as to where the injury occurred, which is the Lex LOCA delicti test. So I want to make sure I address that specific question, that if you assume Lex LOCA delicti, is there a problem here? Is there some complicated question? And the answer's no. In fact, when Mr. Massey was saying, well, you know, we shouldn't be talking about the restatement test, or I should not be complaining about how Judge Groh engaged in that examination. The reason I bring it up is, I want to make sure I make the point that it's not a complicated question. If we stick with Lex LOCA delicti, as I advocate for, it's not a thorny issue. We don't need to move beyond that, because if you do move beyond, if you go down the rabbit hole and you start looking at all those restatement factors, they all point to West Virginia anyway. So that was my point in bringing that up. I do want to make sure I fully answer the concerns that you have, Judge Agee, about certification. And I ran out of time the first time, I want to make sure I get there. The reason I'm torn is this. I believe that it's clear that West Virginia considers this a tort, and I believe it's clear that they would apply Lex LOCA delicti. Now if you feel unsure, then please do certify it, because I feel very confident in how the West Virginia Supreme Court is going to rule. Now it's more time and it's more money out of my client's pocket, but if you feel you need it, then let's go do it. But from where I stand, it just doesn't seem to be a hard question to me. You know, if you focus the factual inquiry on the actual tortious conduct that is being alleged in the complaint, it's really not a hard case. It's a tort. And it happened in West Virginia, because that's where Mrs. Kenny got hurt. And that's how Lex LOCA delicti works. Mr. Massey brought up this idea of, he didn't use these words in his oral argument, but he did in his briefs, this idea of a parasitic tort. This idea that this tort cannot even exist in the absence of a contract. Well, you know, that's just not the way it works. In West Virginia, the Unfortunate Trade Practices Act does not depend on a contractual relationship between the plaintiff and the defendant. Take a look at the Taylor v. Nationwide case. The plaintiff sued not only Nationwide, but also a claims adjuster. Her name's Scarlett Tarley. I happen to know Ms. Tarley a little bit. She's a very nice lady. But she got sued individually. And the question was, can a claims adjuster be sued individually? They don't have a contract with the insured. And the answer from the Supreme Court was, well, yeah, they're a person. They're in the business of insurance. And that's all it takes to get sued under the Unfortunate Trade Practices Act, is being a person and being in the business of insurance. A claims adjuster is that person. So she got sued. The Jordache case. The Jordache case, our Supreme Court said, well, if you're the plaintiff and, you know, you have an insurance policy, you could lose your insurance coverage fight with the insurance company and still be able to sue the insurance company under the Unfortunate Trade Practices Act. Why? Well, because the Unfortunate Trade Practices Act is not about whether you win or lose on coverage. It's about the process. It's about did you handle the claim properly or improperly. And if you handled it improperly, did that cause some harm to the plaintiff? So the wrongful conduct arises out of the adjustment process. Yes, Your Honor. Which goes back to your argument. You move the timeline up to the adjustment. That's what's... Exactly. And let me be fair to the district courts that have gone, I'll use the word, astray. I think they do so in a good-natured fashion. I mean, I don't think that Judge Goodwin's trying to mess up when he decides the Penn and Cole case, for instance. But those kinds of cases, I think the reason they go wrong is because they are focused on, as Mr. Massey is advocating, well, this all grew out of a contract. But this is not a parasitic tort. One more thing to pay attention to, the three cases I wanted to bring to your attention to prove my point that it's not a parasitic tort are the Taylor case I mentioned, the Jordache case. The other is just the simple fact that the Unfor Trade Practices Act for several decades until 2005 allowed a third-party claimant to file a lawsuit against the tort-feasors insurance company. Now, the legislature in 2005 eliminated that right for third-party claimants by adding another statute right after the Unfor Trade Practices Act. But that doesn't change the nature of the tort. It was never based on the existence of a contract. You can see from the Elmore case, a third-party claimant never has a contract with the tort-feasors insurance company, but they still get to sue under the Unfor Trade Practices Act, at least they did before 2005. You know, here's another analogy. I have a contract with my doctor. My doctor has the obligation to treat me, and I have an obligation to pay my doctor. That's our contract. If she commits malpractice, well, does that mean that my malpractice action against my doctor is somehow bound by the contract that we have? Of course not. It's medical malpractice, and it exists independent of whether we have a contract. The simple fact is this, Your Honor. Again, Judge Crowe made a mistake. It's an honest mistake. If you believe that certification can help clear up the law for other cases that you have, I'm not afraid of that. I mean, I'm happy to go there. It's just, it is going to cost my client more time and more money. I don't think it's necessary to decide this particular case, but I'm happy to do it if you feel you need it. If you have any questions, I'm happy to address them. Thank you very much. We'll come down and greet counsel and then move on to our next case.
judges: G. Steven Agee, Barbara Milano Keenan, Henry F. Floyd